# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00068-COA

**HOME BASE LITTER CONTROL, LLC**            **APPELLANT**

**v.**

**CLAIBORNE COUNTY, MISSISSIPPI**            **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/13/2013 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | KENNETH B. RECTOR |
| ATTORNEYS FOR APPELLEE: | BARBARA BLACKMON |
| | EDWARD BLACKMON |
| | JANESSA EMONTAN BLACKMON |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT GRANTED TO APPELLEE |
| DISPOSITION: | REVERSED, RENDERED, AND REMANDED - 06/16/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ROBERTS, J., FOR THE COURT:**

¶1. Home Base Litter Control LLC entered into a contract with Claiborne County for rural solid-waste-collection services. Claiborne County terminated the contract early, and Home Base sued for breach of contract and damages. The Claiborne County Circuit Court granted summary judgment in favor of Claiborne County, finding that the six-year eight-month contract entered into by the parties violated the six-year statutory maximum in Mississippi Code Annotated section 17-17-5(1) (Rev. 2012), and that the County could not be found in breach of an illegal contract. We find this was in error.

¶2. A severability clause in the contract allowed for the severance of any illegal term. The only illegal term was the extension of the contract by eight months past the six-year statutory maximum. Severing the illegal portion of the contract, the last eight months, the remaining six-year contract complies with the statute, and is legal.

¶3. Because the contract was valid and enforceable for six years, the County breached its contract with Home Base when it terminated the contract prior to the expiration of the six-year term without proper notice. We reverse the grant of summary judgment in favor of the County, and render partial summary judgment in favor of Home Base. We remand for a hearing on damages suffered by Home Base for the breach.

## FACTS AND PROCEDURAL HISTORY

¶4. In January 2008, the Claiborne County Board of Supervisors issued a request for proposals (RFP) for rural solid-waste-collection and solid-waste-disposal services. Claiborne County provided the RFP and contract documents to companies that had expressed interest in submitting a bid, including Home Base.

¶5. The RFP provided:

> This Contract shall be for an initial term from April 1, 2008[,] to and including March 31, 2011. The initial term of this Contract may be automatically extended without any further action by the parties for one (1) additional three (3) year term upon the same terms and conditions unless the County or Contractor elects to terminate this Contract effective upon the expiration of the initial three (3) year term by giving the other party at least sixty (60) days prior written notice of termination by certified mail, return receipt requested . . . .

¶6. Home Base submitted the winning bid. On March 4, 2008, Claiborne County awarded the contract to Home Base. As provided in the RFP, the contract was set to run from April

2

1, 2008, to March 31, 2011, with an automatic three-year extension, unless a notice of termination was given at least sixty days prior to March 31, 2011. On March 31, 2008, Home Base and Claiborne County entered into the "Rural Solid Waste Collection Services Agreement."

¶7.    On March 13, 2008, Preferred Transport Company LLC (PTC), an unsuccessful bidder, challenged the contract entered into between Claiborne County and Home Base. PTC alleged that the County had improperly considered factors outside the RFP in awarding the contract to Home Base. Specifically, the County considered that Home Base was "owned by a local resident, would offer special services for elderly customers, and [would] provide employment for local residents." *Preferred Transp. Co. v. Claiborne Cnty. Bd. of Sup'rs*, 32 So. 3d 549, 553 (¶9) (Miss. Ct. App. 2010). The Claiborne County Circuit Court agreed that the County had exceeded its authority in considering factors outside the RFP, and reversed Claiborne County's decision to award the bid to Home Base. *Id.* The trial court ordered Claiborne County to reopen the bidding process to include the additional factors in its RFP. *Id.* at 551 (¶4). The trial court's order provided that Home Base was "temporarily allowed to continue" providing disposal services during the rebidding process. PTC appealed, and this Court affirmed the trial court's decision. *Id.* at 555 (¶17).

¶8.    In compliance with the trial court's order, Claiborne County issued a second RFP on August 26, 2008. The second RFP provided that Claiborne County offered the proposals "in accordance with the Order of the Circuit Court of Claiborne County, dated August 6, 2008." The contract documents and specifications contained in the second RFP, similar to the first

3

RFP, provided that the contract would be for an initial term of three years, with an automatic three-year extension, unless proper notice of termination was given.

¶9.	Home Base again submitted the winning bid. Pursuant to the terms of the second RFP, Claiborne County awarded Home Base a three-year contract commencing on December 8, 2008. In so doing, Claiborne County asserts that instead of creating a new contract, Claiborne County and Home Base executed an extension of the original contract, committing the parties to an "additional" three-year period commencing on December 8, 2008, and extending through December 8, 2011. The second agreement incorporated the terms and conditions of the prior contract through the following provision:

> This contract shall be in force and effect and is to be comported under the same terms and conditions as the prior contract between the parties[,] which commenced on April 1, 2008. All payments, financial terms, collection specifications, insurance coverage, compliance conditions and disclosure requirements are to remain the same as agreed to within the prior contract.

The termination provision in the second agreement, similar to the first, states:

> The initial term of this contract may be automatically extended without any further action by the parties for one (1) additional three (3) year term upon the same terms and conditions unless the County or Contractor elects to terminate this Contract effective upon the expiration of the initial three (3) year term by giving the other party at least sixty (60) days prior written notice of termination by certified mail, return receipt requested . . . .

¶10.	On May 11, 2012, Claiborne County notified Home Base by letter that the second agreement would be terminated in twenty days, on May 31, 2012. Claiborne County admitted that it failed to give Home Base notice as set out in the contract of its intention to terminate the second agreement. However, the County asserted that the contract violated the six-year statutory limit of section 17-17-5(1), and it could not be held to its terms.

4

¶11. Home Base sued Claiborne County for breach of contract, arguing that the contract at issue indeed fell within the statutory limit of section 17-17-5(1). Home Base argued that Claiborne County's untimely termination without sixty days' notice prior to December 8, 2011, constituted a breach of contract, thereby entitling Home Base to damages. Both Home Base and Claiborne County filed motions for summary judgment.

¶12. Home Base argued that the current term began upon the award of the new contract in December 8, 2008, and provided for a permissible term of only six years. Home Base also argued that the second agreement incorporated the terms of the prior contract, and thus failed to constitute a mere extension of the prior void contract. Home Base further asserted that since, at no point prior to December 8, 2011, did it receive a notice of an intention to terminate the second agreement, the second agreement automatically extended for an additional three-year term expiring on December 8, 2014.

¶13. In contrast, Claiborne County argued that the effective date and contract term of the second agreement began on April 1, 2008—the effective date of the first agreement that was judicially set aside by the trial court—and ended on December 8, 2014. Claiborne County argued that the second agreement exceeded the maximum statutory term of six years and was therefore automatically void, and that it could not be found in breach of a void contract. *See* Miss. Code Ann. § 17-17-5(1).

¶14. On February 3, 2014, the trial court denied Home Base's motion for summary judgment, but granted the motion for summary judgment filed by Claiborne County, finding:

> [H]ad the contract been for a term of six years, as it was originally, it would
> have complied with [section 17-17-5(1)] and been terminable only pursuant to

the contract's provisions. However, the contract was for a period of more than six years; therefore, the contract is void and the Claiborne County Board of Supervisors was within its rights to cancel the contract as it did. It was by the choice of the parties that subsequent to this court ordering Claiborne County to reopen the bidding process that an "Extension of Solid Waste Collection Contract" was executed[,] rather than a new Solid Waste Collection Contract. Accordingly, this Court finds that Defendant was not bound by the terms of the contract and was within its rights to terminate the contract as it did, despite the fact that it was not in compliance with the termination provision set forth in the contract.

¶15. Home Base appeals, asserting the following issues: (1) the trial court erred in finding the contract exceeded the six-year statutory maximum; (2) Claiborne County was estopped from taking a position contrary to its second RFP; and (3) any invalid provision in the extension contract was severable with the remainder of the contract to remain enforceable as written. We find Home Base's third argument meritorious and reverse the grant of summary judgment in favor of the County.

**STANDARD OF REVIEW**

¶16. We review the grant or denial of a summary-judgment motion de novo. *Hill v. City of Horn Lake*, 160 So. 3d 671, 675 (¶8) (Miss. 2015). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." M.R.C.P. 56(c). "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). However, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e).

6

## I.      Six-Year Statutory Maximum of Section 17-17-5(1)

¶17.    Home Base argues that the second solid-waste-collection contract was a new contract with the County for a distinct six-year term, which complied with section 17-17-5(1).  The trial court, however, found that the second agreement was an "extension" of the first, thus creating a six-year eight-month contract, in violation of the statute.  This issue is one of contract interpretation.

¶18.    Section 17-17-5(1) prohibits a board of supervisors from entering into a contract for solid-waste collection that exceeds six years.  It states:

> After December 31, 1992, the board of supervisors and/or municipal governing body shall provide for the collection and disposal of garbage and the disposal of rubbish.  The board of supervisors and/or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies, and the service may include house-to-house service or the placement of regularly serviced and controlled bulk refuse receptacles within reasonable distance from the farthest affected household, and the wastes disposed of in a manner acceptable to the department and within the meaning of this chapter.  The board of supervisors and/or municipal governing body shall have the power to and are hereby authorized to enter into contracts related in any manner to the collection and transportation of solid wastes for a term of up to six (6) years . . . .

¶19.    Regarding the term agreed to, the second contract states:

> [Claiborne] County desires to extend said prior contract for an additional period of [three] years commencing on December 8, 2008, as authorized by section 3.0 of said prior contract.
>
> . . . .
>
> 1.0 Contract:  Claiborne County agrees to contract with Home Base Litter Control for the collection of solid waste within the County for an additional period of three years commencing on December 8, 2008, unless substantially

amended and/or rendered null and void by Order of the Mississippi Supreme Court, or other authorized jurisdiction.

The second contract also incorporated the following provision of the first contract:

This contract shall be in force and effect and is to be comported under the same terms and conditions as the prior contract between the parties which commenced on April 1, 2008. All payments, financial terms, collection specifications, insurance coverage, compliance conditions and disclosure requirements are to remain the same as agreed to within the prior contract.

¶20. Naturally, the parties have differing opinions as to the meaning of the contract. Home Base argues the second contract is a new contract—i.e., a legal six-year term—while the County argues the second contract is an extension of the first—i.e., an illegal six-year eight-month term. But "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Royer Homes of Miss. Inc. v. Chandeleur Homes Inc.*, 857 So. 2d 748, 753 (¶10) (Miss. 2003). It is this Court's duty to look to the terms of the contract and seek its legal intent from an objective reading of the words employed. *Id.* at 752 (¶10). In doing so, we first look to the "four corners" of the contract to determine its meaning. *Id.* We may only go beyond the four corners if the contract is ambiguous, and if we cannot harmonize its provisions with the parties' apparent intent. *Id.* If the contract is unambiguous, it will be enforced as written. *Id.* at 751 (¶7). Contract construction is a question of law, which we review de novo. *Id.* at 752 (¶7).

¶21. We find the second agreement is plainly an extension of the first contract. The second agreement is entitled "Extension of Solid Waste Collection Contract." It specifically states that the "County desires to extend said prior contract for an additional period of [three] years commencing on December 8, 2008 . . . ." It further states that the "County agrees to contract

8

with Home Base Litter Control for the collection of solid waste within the County for an additional period of three years commencing on December 8, 2008 . . . ." Finally, it provides that the second agreement is "to be comported under the same terms and conditions as the prior contract between the parties which commenced on April 1, 2008." Based on these plain terms in the second agreement, the second agreement is not a new contract, but an extension of the first. Because there is no ambiguity in the plain terms of the contract, there is no need to go beyond the four corners of the contract. We find that since the second agreement is plainly an extension of the first, the combined agreements created a six-year eight-month contract, in violation of section 17-17-5(1).

¶22. Home Base argues that this finding ignores our prior decision that invalidated the first agreement. *See Preferred Transp. Co.*, 32 So. 3d at 553 (¶11). Home Base asserts that because the first contract was set aside, there is no contract that could be extended. The key to whether the first contract could be permissibly extended is whether the first contract was "void" or "voidable." A "void" contract is one that is illegal ab initio as a matter of law, whereas a "voidable" contract is one that is later set aside due to some external factor. *Wells Fargo Advisors LLC v. Runnels*, 126 So. 3d 137, 144 (¶25) (Miss. Ct. App. 2013) (citing *In re Hood*, 958 So. 2d 790, 815 (¶87) (Miss. 2007)). "Void ab initio means that a contract is null from the beginning if it seriously offends law or public policy, in contrast to a contract that is merely voidable at the election of one of the parties." *Id.* For example, a contract entered into by fraudulent inducement—an illegal factor outside the contract—renders a contract voidable, not void. *Turner v. Wakefield*, 481 So. 2d 846, 848-49 (Miss. 1985). A

9

voidable contract will only be invalidated if "the one defrauded . . . act[s] promptly and finally to repudiate the agreement[.]" *Id.* If no action is taken by the defrauded party, the voidable contract will continue legally in existence. A voidable contract can be revived, but a void contract cannot.

¶23.    Here, the first contract was voidable, as there was nothing within the contract itself that was illegal. The contract was invalidated because the County unlawfully considered factors not listed in its RFP, and it was challenged by Home Base's competing bidder. If the contract had not been challenged, it would have remained in full force and effect, as there was nothing within the contract itself that rendered the contract void. Home Base operated under the first contract from its inception on April 1, 2008, until December 8, 2011, when the contract was rebid and the extension contract became effective. When the contract was rebid, the County's unlawful act of considering factors outside the RFP was cured. The extension contract, rather than awarding a new six-year contract, restarted the six-year term and reinstated the provisions of the first contract. Because the first contract was voidable, not void, the parties were within their rights to extend the first contract and incorporate its terms into the second agreement.

¶24.    Because the second agreement was an extension of the first, it created a six-year eight-month contract, in violation of section 17-17-5(1). However, as will be discussed in issue three, we do not find the contract entirely void, but rather only void insomuch as it exceeded the statutory maximum of six years.

**II.    Estoppel**

10

¶25. Next, Home Base argues Claiborne County is estopped from taking a position contrary to the terms of the second RFP under the theories of equitable estoppel and quasi-estoppel.

¶26. "[E]stoppel forbids one from both gaining a benefit under a contract and then avoiding the obligations of that same contract." *Bailey v. Estate of Kemp*, 955 So. 2d 777, 782 (¶21) (Miss. 2007). Equitable estoppel applies where the following factual elements are proven: "(1) belief and reliance on some representation; (2) change of position, as a result thereof; (3) detriment or prejudice caused by the change of position." *Cmty. Extended Care Ctrs. Inc. v. Bd. of Sup'rs for Humphreys Cnty.*, 756 So. 2d 798, 804 (¶24) (Miss. Ct. App. 1999). Quasi-estoppel, a similar doctrine, "'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken,' and 'applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" *Bailey*, 955 So. 2d at 782 (¶21) (quoting *Bott v. J.F. Shea Co.*, 299 F.3d 508, 512 (5th Cir. 2002)).

¶27. While Home Base argues it has proven a case for estoppel, it is well settled that "no estoppel may be enforced 'against the state or its counties where the acts of their officers were unauthorized.'" *Cmty. Extended Care Ctrs.*, 756 So. 2d at 804 (¶24) (quoting *Bd. of Educ. of Lamar Cnty. v. Hudson*, 585 So. 2d 683, 688 (Miss. 1991)). The County was clearly unauthorized by section 17-17-5(1) to contract for more than six years with Home Base. Home Base's estoppel argument is without merit.

### III. Severability Clause

¶28. Alternatively, Home Base argues that if the agreement illegally exceeded six years by

virtue of the extension contract, the agreement was not rendered entirely void. It points to a severability clause in the contract, which allows for the severance of any illegal term. It argues that severing the portion of the contract that exceeded six years would make the agreement valid.

¶29. The severability provision in the extension agreement, to which both the County and Home Base agreed, states:

> In case any one or more of the provisions contained in this Contract shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Contract and this Contract shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein; provided[,] however, that it is the intention of the parties hereto that in lieu of each term, clause, or provision that is held to be invalid, illegal, or unenforceable, there shall be added as a part of this Contract a term, clause or provision as similar in terms to such invalid, illegal or unenforceable term, clause or provision as may be possible and be valid, legal or enforceable.

¶30. We agree with Home Base's argument that the contract was illegal only inasmuch as it exceeded the statutory maximum of six years. Under the severability provision, the last eight months of the six-year eight-month contract could be stricken. Striking the final eight months of the contract, the remaining six-year term of the contract complies with the statute and is binding and enforceable.

¶31. Home Base argues that the County breached the contract by failing to give notice of termination sixty days prior to the expiration of the first three-year term. To prove breach of contract, a claimant must show "by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken[] or breached it[.]" *Bus. Commc'ns Inc. v. Banks*, 90 So. 3d 1221, 1224 (¶10) (Miss. 2012) (citation omitted).

12

"[M]onetary damages are a remedy for breach of contract, not an element of the claim." *Id.* at 1225 (¶11). "However, a plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Id.* at (¶12) (quoting *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)).

¶32.    The contract required Claiborne County to give sixty days' notice of termination prior to the end of the first three-year term. The first three-year term began on April 1, 2008, and ended on April 1, 2011. The contract required notice of termination to be given sixty days prior to the expiration of the first term, or no later than February 1, 2011. Because no notice was given, the term extended a second three years, until April 1, 2014. Claiborne County notified Home Base on May 11, 2012, that the contract would be terminated in twenty days, on May 31, 2012. As found above, the contract was valid and enforceable for the first six years. Because Claiborne County failed to comply with the contractual notice requirement during those six years, it was in breach of contract, and Home Base is entitled to damages for that breach. Home Base is entitled to damages for the breach from May 31, 2012—the date the contract was terminated—until April 1, 2014—the date the contract expired by law. The amount of damages to be awarded is a factual question, which must be determined by the trial court.

¶33.    We note that the County asserts Home Base has waived its argument regarding the severability provision because it was not specifically raised before the trial court. Issues not raised before the trial court are procedurally barred from consideration on appeal. *Brown v.*

13

*Thompson*, 927 So. 2d 733, 738 (¶16) (Miss. 2006). "However, this procedural bar clearly applies only to an issue never raised below, which is not the same as a different argument pertaining to the same issue." *Id.* The issue raised in Home Base's summary-judgment motion was whether the County breached its contract with Home Base. The argument regarding the severability clause is a different argument pertaining to this issue. We find our review of the issue is not only appropriate, but required. This matter is before the Court on appeal of cross-motions for summary judgment. The matter for review is solely a question of law—whether the trial court erred in granting summary judgment in favor of Claiborne County. Our standard of review is de novo. *Criss v. Lipscomb Oil Co.*, 990 So. 2d 771, 772 (¶2) (Miss. Ct. App. 2008). We are required to "consider all of the evidence before the [trial] court . . . ." *Id.* The severability provision of the contract was before the trial court, and it is properly before this Court for consideration on appeal.

## CONCLUSION

¶34. The extension agreement created an illegal six-year eight-month contract, which violated the six-year statutory maximum for solid-waste-collection services set out in section 17-17-5(1). However, because the severability clause allowed for the final eight months of the six-year eight-month contract to be stricken, the first six years of the contract were enforceable. The contract was enforceable from its inception on April 1, 2008, through April 1, 2014. The County breached its contract with Home Base when it terminated the contract two years early on May 31, 2012. The trial court's grant of summary judgment in favor of the County is reversed, and partial summary judgment is rendered in favor of Home Base for

14

the County's breach of contract. Home Base is entitled to damages incurred due to the breach from May 31, 2012, through April 1, 2014, in an amount to be determined by the trial court. This matter is remanded for a hearing on damages due to the County's breach.

¶35. **THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTY IS REVERSED, RENDERED, AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**