# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-CA-00378-COA

**WASTE MANAGEMENT OF MISSISSIPPI, INC.**                         **APPELLANT**

**v.**

**CHICKASAW COUNTY, MISSISSIPPI, BY AND                    APPELLEE
THROUGH ITS BOARD OF SUPERVISORS**

DATE OF JUDGMENT:                03/17/2025
TRIAL JUDGE:                     HON. JOHN KELLY LUTHER
COURT FROM WHICH APPEALED:       CHICKASAW COUNTY CIRCUIT COURT,
                                 FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:         SIMON TURNER BAILEY
                                 J. CAL MAYO JR.
                                 JAMES STEPHEN FRITZ JR.
ATTORNEY FOR APPELLEE:           JIM HOOD
NATURE OF THE CASE:              CIVIL - CONTRACT
DISPOSITION:                     REVERSED AND RENDERED - 05/19/2026
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     In 1992, Waste Management (WM) and Chickasaw County entered into a "Waste Disposal Agreement" under which WM would dispose of solid waste generated in the county at a landfill WM would operate in the county.  The Agreement was for a thirty-year term and provided that the County could extend the Agreement "for the additional term of thirty (30) years or the remaining life of the Sanitary Landfill, whichever is less, *to the extent such extension is consistent with Mississippi Law*."  (Emphasis added).

¶2.     As the Agreement's initial thirty-year term approached its end in 2022, WM and the County disagreed as to whether the County could extend the Agreement.  WM maintained

that the Agreement could not be extended because Mississippi law limits such contracts to a maximum term of thirty years—hence, an extension would *not* be "consistent with Mississippi law." WM stated that a new public request for proposals (RFP) and a new contract were necessary. In contrast, the County maintained that it could extend the Agreement because it was executed during an alleged seven-month "gap" or "pause" in 1992 when the statutory thirty-year limit on waste disposal contracts allegedly was "not in effect." The County sued WM in the Chickasaw County Circuit Court, seeking a declaratory judgment that it could exercise the option to extend, injunctive relief requiring WM to continue to perform under the Agreement, and damages. The circuit court ultimately agreed with the County, denied WM's motion for summary judgment, and granted the County's motion for summary judgment. The court ordered WM to continue to perform under the terms of the 1992 Agreement. WM filed a notice of appeal.

¶3.    For the reasons explained below, we conclude that the County cannot exercise the option to extend the Agreement because at all relevant times Mississippi law prohibited counties and municipalities from entering into waste disposal contracts longer than thirty years. Therefore, the plain language of the Agreement precludes an extension because the extension would *not* be "consistent with Mississippi law." Accordingly, we reverse the judgment of the circuit court and render summary judgment in favor of WM.

### FACTS AND PROCEDURAL HISTORY

¶4.    Prior to 1991, Mississippi law permitted counties and municipalities to provide for the collection and disposal of solid waste and also permitted them to enter into contracts for the

disposal of solid waste for terms of up to twenty-five years.  Specifically, Mississippi Code

Annotated section 17-17-5 provided as follows:

> The board of supervisors or municipal governing body may be and is hereby authorized to make available to the general public collection and disposal facilities for solid wastes.  The board of supervisors or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies . . . .  The board of supervisors or municipal governing body shall have the power to and are hereby authorized . . . to enter into . . . contracts for treatment, processing, distribution, recycling, elimination or disposal of solid wastes for a term of up to twenty-five (25) years. . . .

Miss. Code Ann. § 17-17-5 (Supp. 1984) (as amended by 1984 Miss. Laws ch. 523, § 1).

¶5.    In 1991, the Legislature amended section 17-17-5 to *require*—rather than simply

permit—local governments to provide for the collection and disposal of solid waste and to

increase the maximum term for waste disposal contracts to thirty years.  As amended, section

17-17-5 provided as follows:

> The board of supervisors or municipal governing body *shall* provide for the collection and disposal of garbage and the disposal of rubbish. The board of supervisors or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies . . . . The board of supervisors or municipal governing body shall have the power to and are hereby authorized . . . to enter into . . . contracts for treatment, processing, distribution, recycling, elimination or disposal of solid wastes *for a term of up to thirty (30) years*. . . .

Miss. Code Ann. § 17-17-5 (Supp. 1991) (as amended by 1991 Miss. Laws ch. 581, § 25)

(emphasis added).  The amendments took effect upon passage (April 12, 1991).

¶6.    In 1992, the Legislature further amended section 17-17-5 to delay the effective date

of the mandate that local governments provide for waste collection and disposal services.

The maximum term for waste disposal contracts remained thirty years.  As amended, section

3

17-17-5 provided as follows:

> *After December 31, 1992*, the board of supervisors and/or municipal governing body *shall* provide for the collection and disposal of garbage and the disposal of rubbish. The board of supervisors and/or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies . . . . The board of supervisors and/or municipal governing body shall have the power to and are hereby authorized to . . . enter into . . . contracts for treatment, processing, distribution, recycling, elimination or disposal of solid wastes for a term of up to thirty (30) years. . . .

Miss. Code Ann. § 17-17-5 (Supp. 1992) (as amended by 1992 Miss. Laws ch. 583, § 1) (emphasis added). The amendment took effect upon passage (May 15, 1992).[1]

¶7. On June 16, 1992, WM and Chickasaw County entered into the Agreement, under which WM would dispose of solid waste generated in the County at the Knox Landfill.[2] Section III of the Agreement described its term as follows:

> The term of this Agreement shall be thirty (30) years. The County shall have the right to extend the Agreement (by written notice prior to the end of the initial term) for the additional term of thirty (30) years or the remaining life of the Sanitary Landfill, whichever is less, *to the extent such extension is consistent with Mississippi Law*.

(Emphasis added).

¶8. Effective July 1, 1996, the Legislature amended Mississippi Code Annotated section 31-7-13 to require counties to issue a public RFP before entering into any contract for the collection or disposal of garbage or solid waste. *See* Miss. Code Ann. § 31-7-13 (Supp. 1996) (as amended by 1996 Miss. Laws ch. 495, § 1).

¶9. In September 2020, WM sent an email to the Chickasaw County Chancery Clerk

---

[1] The same statute limited waste collection contracts to a maximum term of six years.

[2] The landfill is now known as the Prairie Bluff Landfill.

4

advising that the Agreement between WM and the County would expire on June 15, 2022, and that because thirty years was the maximum term allowed by state law for waste disposal contracts, the County would need to issue a public RFP prior to the end of the contract term. Thereafter, WM and the County continued to communicate, and county officials initially indicated that they would issue a public RFP for a new waste disposal contract.

¶10.    However, on March 22, 2022, the Chickasaw County Board of Supervisors voted to extend the original Agreement "for another 30 years" pursuant to Section III of the Agreement. The County then notified WM of its intent to exercise its option to extend the Agreement. In response, WM stated that although it hoped to continue to provide disposal services for the County, the County was required by law "to advertise and offer an RFP," that the maximum term for a disposal contract under Mississippi law was thirty years, that the Agreement's thirty-year term was expiring, and that the Agreement could not "be renewed without going through the RFP process."

¶11.    In May 2022, the County filed a complaint for declaratory and injunctive relief and, in the alternative, damages for breach of contract in the Chickasaw County Circuit Court. The County sought a declaratory judgment that its option to extend the Agreement was enforceable, a preliminary injunction requiring WM to continue to perform under the Agreement, and a permanent injunction requiring specific performance. Citing language from the May 1992 amendments to section 17-17-5, the County argued that the thirty-year limit on waste disposal contracts was not "in effect or applicable when the [Agreement] was entered into on June 16, 1992." In the alternative to specific performance, the County sought

damages for breach of contract. The County also alleged that WM was estopped from denying the validity of the County's option to extend the Agreement and that WM was liable for punitive damages. In response, WM filed a motion to dismiss, arguing that the thirty-year maximum term for waste disposal contracts was in effect at all relevant times, including the Agreement's effective date.

¶12. On June 1, 2022, the circuit court held a hearing on the County's motion for a preliminary injunction. The County argued that the 1992 amendments to section 17-17-5 "froze" the "application" of the statute for "seven months," until December 31, 1992, creating a "pause time" or a "gap" during which the thirty-year limit on waste disposal contracts did not apply. The County argued that during that seven-month "pause" or "gap," a county could have entered into a contract "for a hundred years" if it so desired. In response, WM argued that the thirty-year limit applied at all times, that the County's attempt to extend the Agreement would effectively transform it into an illegal sixty-year contract,[3] and that the Agreement did "not provide an unconditional right to extend" but only a "conditional right to extend" if the extension would be "consistent with Mississippi law."

¶13. At the conclusion of the hearing, the circuit court ruled from the bench and granted the County's request for a preliminary injunction. The court found that there was "a real possibility" that the Agreement "fell into no man's land" because it was entered into between May 15 and December 31, 1992.

---

[3] WM cited *Home Base Litter Control LLC v. Claiborne County*, 183 So. 3d 94, 99-101 (¶¶17-24) (Miss. Ct. App. 2015), *cert. denied*, 181 So. 3d 1010 (Miss. 2016), for the proposition that the extension would result in an illegal sixty-year contract, not a new thirty-year contract.

¶14. Before the circuit court issued a written ruling, WM filed a supplemental brief in which it again argued that the thirty-year limit on waste disposal contracts applied at all relevant times. WM emphasized that the phrase "After December 31, 1992" in the 1992 amendments to the statute referred only to the then-new "*mandatory* obligation" that the Legislature had imposed on counties and municipalities "to collect and dispose of waste."

¶15. In a response brief, the County seemingly pivoted and espoused a new theory regarding the extension. The County argued that neither the original thirty-year contract nor the proposed thirty-year extension violated the thirty-year limit in section 17-17-5. The County continued, "The statute states that county boards of supervisors can enter into contracts for periods of up to thirty years. That is what [the County] has done now, *twice*." (Emphasis added). The County argued that "two separate contracts" were at issue, both valid under Mississippi law.

¶16. On June 14, 2022, the circuit court entered a written order granting a preliminary injunction and denying WM's motion to dismiss. The order required WM to continue accepting waste for disposal pursuant to the terms of the 1992 Agreement.

¶17. WM subsequently filed a motion for summary judgment, arguing that the 1992 Agreement could not be extended for an additional thirty years because (a) the extension would transform the Agreement into a sixty-year contract in violation of section 17-17-5, and (b) the Agreement's plain language permitted an extension only "to the extent such extension is consistent with Mississippi law." WM also argued that the County could not circumvent section 17-17-5's thirty-year limit "by re-labeling its claimed extension of the Agreement as

7

a new, separate contract." WM further argued that a new contract would require a public RFP pursuant to section 31-7-13.

¶18. The County responded to WM's motion and later filed a combined cross-motion for summary judgment and for sanctions for alleged discovery violations and alleged violations of court orders. The County argued that the contract was valid due to the Legislature's "suspension" of section 17-17-5 from May to December 1992. The County argued that the original 1992 Agreement and the thirty-year extension were both valid—and that the RFP statute enacted in 1996 did not apply—because "the extension of the 1992 contract in 2022 was **not a new contract under the bidding statute**." The County further argued that WM was estopped from denying the validity of the option to extend.

¶19. Following a hearing, the court ruled from the bench that the County's option to extend the Agreement was enforceable and that WM was obligated to continue to perform under the Agreement. The court subsequently entered a written order denying WM's motion for summary judgment, granting the County's motion for summary judgment, and ordering that WM was "permanently enjoined to comply with the terms of the 1992 [Agreement]." The court certified its decision as final pursuant to Mississippi Rule of Civil Procedure 54(b), and WM filed a notice of appeal.

**ANALYSIS**

¶20. We review an order granting or denying summary judgment de novo. *Price v. Purdue Pharma Co.*, 920 So. 2d 479, 483 (¶10) (Miss. 2006). "If no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment

8

should be entered in that party's favor." *Id.* "Matters of statutory interpretation also are reviewed by this Court using a de novo standard." *Chandler v. McKee*, 202 So. 3d 1269, 1271 (¶5) (Miss. 2016). "Additionally, the Court applies a de novo standard of review to issues involving the interpretation of contracts." *R.K. Metals LLC v. E & E Co.*, 404 So. 3d 123, 125 (¶7) (Miss. 2025).

### I. The plain language of the Agreement and section 17-17-5 do not authorize an extension.

¶21. As discussed above, prior to 1991, counties and municipalities were *authorized* to provide for the collection and disposal of solid waste but were not required to do so. *See supra* ¶4. Counties and municipalities were also authorized to enter into contracts for the disposal of solid waste for up to twenty-five years. *Id.* In 1991, the Legislature amended Mississippi Code Annotated section 17-17-5 to *mandate* that counties and municipalities provide for the collection and disposal of solid waste and to increase to thirty years the maximum term for contracts for the disposal of solid waste. Miss. Code Ann. § 17-17-5 (Supp. 1991). Finally, in 1992, the Legislature delayed the effective date of the statutory mandate that counties and municipalities provide for the collection and disposal of solid waste. Miss. Code Ann. § 17-17-5 (Supp. 1992). As amended in 1992, section 17-17-5 provided as follows:

> *After December 31, 1992*, the board of supervisors and/or municipal governing body shall provide for the collection and disposal of garbage and the disposal of rubbish. The board of supervisors and/or municipal governing body may provide such collection or disposal services by contract with private or other controlling agencies . . . . The board of supervisors and/or municipal governing body shall have the power to and are hereby authorized to . . . enter into . . . contracts for treatment, processing, distribution, recycling, elimination or

9

disposal of solid wastes for a term of up to thirty (30) years. . . .

*Id.* (emphasis added).

¶22.    Contrary to the County's arguments, the 1992 amendments did *not* amend, repeal, or suspend the thirty-year limit on contracts for the disposal of solid waste.  At all times relevant here, section 17-17-5 limited such contracts to a thirty-year term.  The clause added to the beginning of section 17-17-5—"After December 31, 1992"—only amended the *first sentence* of the statute, delaying the effective date of the then-new statutory mandate requiring counties and municipalities to provide for the collection and disposal of solid waste.  At the time the subject Agreement was executed—and at all subsequent times continuing to this day—the maximum term for solid waste disposal contracts has been thirty years.  Therefore, a thirty-year extension of the original thirty-year contract term would result in a sixty-year contract and would violate section 17-17-5.

¶23.    This Court addressed a similar issue in *Home Base Litter Control LLC v. Claiborne County*, 183 So. 3d 94 (Miss. Ct. App. 2015), *cert. denied*, 181 So. 3d 1010 (Miss. 2016). *Home Base* involved section 17-17-5's six-year limit on contracts for the collection of solid waste.  *Id.* at 99-100 (¶¶17-18); *see supra* note 1.  Home Base successfully bid on a contract for waste collection services, and Home Base and the county entered into a three-year contract effective April 1, 2008, that provided for an automatic three-year extension unless notice of termination was given at least sixty days prior to the end of the initial three-year term.  *Id.* at 97 (¶6).  However, an unsuccessful bidder challenged Home Base's contract award, and the circuit court ultimately ordered the county to reopen the bidding process while

also allowing Home Base to continue providing collection services under its original contract during the rebidding process. *Id.* at (¶7). Home Base again submitted the winning bid, and Home Base and the county then entered into an "Extension" of the original contract that provided for a three-year term effective December 8, 2008, with an automatic three-year extension unless notice to terminate was given at least sixty days prior to the end of the initial three-year term. *Id.* at 97-99 (¶¶9, 14). After the automatic three-year extension took effect, the county argued that the contract violated section 17-17-5's six-year limit on waste collection contracts because its total term ran for approximately six years and eight months. *Id.* at 100 (¶20). In contrast, Home Base argued that the parties' "second contract" was a "new contract" with a "legal six-year term." This Court agreed with the county, holding:

> Based on these plain terms in the second agreement, the second agreement is not a new contract, but an extension of the first. Because there is no ambiguity in the plain terms of the contract, there is no need to go beyond the four corners of the contract. We find that since the second agreement is plainly an extension of the first, the combined agreements created a six-year eight-month contract, in violation of section 17-17-5(1).

*Id.* at (¶21). We further held that the contract was not "entirely void, but rather only void insomuch as it exceeded the statutory maximum of six years." *Id.* at 101 (¶24).

¶24. This reasoning applies here, and the result is the same in this case. The plain and unambiguous language of the Agreement between WM and the County shows that the thirty-year extension described therein "is not a new contract, but an extension of the first." *Id.* at 100 (¶21). Again, the relevant provision of the Agreement states:

> The term of this Agreement shall be thirty (30) years. The County shall have the right to *extend* the Agreement (by written notice prior to the end of the initial term) for the additional term of thirty (30) years or the remaining life of

11

the Sanitary Landfill, whichever is less, to the extent such *extension* is consistent with Mississippi Law.

(Emphasis added). "Because there is no ambiguity in the plain terms of the contract, there is no need to go beyond the four corners of the contract." *Id.* And because the additional thirty-year term under the Agreement "is plainly an extension of the first," the proposed extension would "create[] a [sixty-year] contract, in violation of section 17-17-5[.]" *Id.* Indeed, the issue here is even clearer than in *Home Base* because WM and the County negotiated and signed only *one* Agreement in 1992, which they never had to rebid or renegotiate, as occurred in *Home Base*.

¶25. Importantly, by holding that the initial thirty-year term and the proposed thirty-year extension are both part of the single Agreement, we do not hold that the Agreement or any part of it is void or invalid. Rather, the Agreement itself resolves this issue by expressly providing that the option "to extend the Agreement" may be exercised *only* if and "to the extent such extension is consistent with Mississippi law." Because an extension would *not* be consistent with section 17-17-5, the extension is not permitted by the plain language of the Agreement itself. For these reasons, the circuit court erred by ruling that section 17-17-5 and the parties' Agreement would permit the extension.[4]

**II. WM is not estopped from contesting the County's attempt to extend the Agreement.**

¶26. The County also argues that "estoppel should apply to prevent [WM] from walking away from its obligations pursuant to the contract it drafted after [WM] has derived the

---

[4] As noted above, we review the circuit court's interpretation of the statute and the parties' Agreement de novo. *See supra* ¶20.

12

benefits therefrom." The County contends that WM agreed to and benefitted from "the contract's terms" and should not be allowed "to avoid its obligation." The County further argues that "[e]ven if the contract could be considered void, as [WM] incorrectly claims, estoppel is nonetheless available to preclude [WM] from so wrongly depriving the people of Chickasaw County from receiving their end of the bargain."

¶27. However, for the reasons explained above, the Agreement is not "void," and WM is not seeking to "avoid" or "walk[] away from" any of its obligations under the Agreement. The Agreement itself provides that the option to extend for an additional thirty-year term can be exercised *only* if and "to the extent such extension is consistent with Mississippi law." Because an extension would *not* be "consistent with Mississippi law," *the plain language of the Agreement itself does not permit an extension*. This is not a matter of a party seeking to "avoid" or "walk away from" a contract; rather, WM seeks to enforce the Agreement according to its terms.

¶28. In support of its estoppel argument, the County further alleges that WM attempted to mislead the County into believing that the Agreement would expire in 2022 and that a new public RFP and contract would be necessary. However, the premise of this argument is flawed. As explained above, the Agreement *did* expire in 2022. Therefore, any statements that WM's employees made to that effect were not misleading. In support of this argument, the County also points to several internal emails among WM employees between 2019 and 2021. These emails indicate that some WM employees appear to have believed that the County could extend the Agreement for an additional thirty years. However, other employees

13

understood that the Agreement would end in June 2022 and stated that the Agreement's expiration needed to be communicated to and discussed with the County. But regardless of what any of these employees believed, WM cannot be "estopped" by an individual employee's understanding of the Agreement that was never communicated to the County.

## CONCLUSION

¶29. A thirty-year extension of the 1992 Agreement between WM and the County would not be "consistent with Mississippi law" (specifically section 17-17-5). Therefore, the plain language of the Agreement precludes an extension, and the circuit court erred by granting the County's motion for summary judgment and by granting injunctive relief requiring specific performance under the terms of the 1992 Agreement. The judgment of the circuit court is reversed, and summary judgment is rendered in favor of WM.

¶30. **REVERSED AND RENDERED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**