BRIDGES, J.,
for the Court:
¶ 1. The Chancery Court of Humphreys County granted summary judgment to the Board of Supervisors for Humphreys County and Humphreys County (collectively referred to as “the Board”) and denied the cross-motion for summary judgment filed by Community Extended Care Centers, Inc. (CECC) in a declaratory judgment action brought by CECC to determine the validity and enforceability of a lease contract between the Board and CECC entered into January 6, 1983 and *799 amended on June 4, 1990. We find that the chancellor erroneously granted summary judgment to the Board and denied CECC’s cross-motion for summary judgment. Accordingly, we reverse and render judgment in favor of CECC.
FACTS
¶2. In late 1982, Humphreys County Nursing Home, Inc., the predecessor in interest to Community Extended Care Centers, Inc., offered to lease a nursing home owned by Humphreys County from the Board of Supervisors.- The Board’s response to the offer is reflected in its January 6,1983 minutes:
RESOLUTION AUTHORIZING LEASE OF NURSING HOME FACILITIES OF HOSPITAL TO HUM-PHREYS COUNTY NURSING HOME, INC.,
WHEREAS, Humphreys County has purchased the facilities formally [sic] known as Belzoni Medical Facilities Development Corporation; and,
WHEREAS, a portion of the facilities consist of a 48 bed Nursing Home and,
WHEREAS, the county is in the process of remodeling said Nursing Home and enlarging the facilities to a 60 bed Nursing Home; and
WHEREAS, the County has- been contacted by Humphreys County Nursing Home, Inc. with a proposal to lease said facilities with the payment of all lease money and the performance of the contract guaranteed by Mississippi Extended Care Centers, Inc., commonly known as Care Inn; and,
WHEREAS, the proposed Lessee has experience in operating Nursing Home Facilities and has .convinced the Board of Supervisors that, it will operate the Nursing Home Facilities in a manner which will provide top-notch service for the citizens of this area:
NOW, THEREFORE, upon motion made, seconded and unanimously carried, the President of the Board of Supervisors be, and he is hereby, authorized to execute in duplicate the original of the lease of the Nursing Home Facilities as they now exist and as they shall exist upon remodeling thereof, with the lease to be dated January 6, 1983, and upon the condition that the performance of all conditions thereof be guaranteed by Mississippi Extended Care Centers, Inc.
¶ 3. In accordance with the resolution, a lease contract dated January 6, 1983, was entered into by and between CECC and the Board through its president. By letter dated March 31, 1983, H.R. Varnado, Jr., the Board’s attorney, notified CECC that the lease contract had been filed in the land records of the chancery clerk on January 19, 1983 at Book 110, pages 19-36.
¶ 4. Under the terms and conditions of the lease contract, the twenty-year lease was secured with a performance guaranty from Mississippi Extended Care Centers, Inc. in favor of the Board. The lease term agreed to by the parties was February 1, 1983 through January 31, 2003, with two ten-year renewal options. In addition to rental payments- óf $100- per bed per month for the first ten years of the lease term and $110 per bed per month for the second ten years of the lease term, the lease required CECC to pay “all local and personal property taxes, insurance, maintenance of the building and- furnishings, fixtures, and equipment and all other charges pertaining to the use and operation of the facilities.”
¶ 5. In its June 4, 1990 minutes, the Board expressly acknowledged the existence of the January 6, 1983 lease contract with CECC by approving an amendment to the lease:
IN RE: ORDER APROVING ' [sic] AMENDMENT TO LEASE BETWEEN HUMPHREYS COUNTY BOARD OF SUPERVISORS AND HUMPHREYS COUNTY NURSING HOME
Reed moved that the Amendment to Lease set forth hereinafter be approved *800 and adopted. Bullock seconded the motion, and the question was put to a vote with the following results:
Bearden aye
Brown aye
Bullock aye
Reed aye
Wood aye
The President declared the motion carried and ordered the amendment approved and adopted, this 4th day of June, 1990. For a copy of the amendment, see Minute Book 41, page _ [sic].
¶ 6. The June 4, 1990 amendment changed paragraph 10 of the January 6, 1983 lease contract to increase CECC’s comprehensive general liability and property damage liability insurance coverage and to provide fire insurance and full extended coverage protection upon the furniture and fixtures on the nursing home portion of the premises. The executed amendment to lease was recorded in Minute Book 41 and in the land records of the chancery clerk at Book 124, page 527.
¶ 7. On November 6, 1990, an amendment to change the name of the lessee in the lease contract from Humphreys County Nursing Home, Inc. to CECC was agreed to and acknowledged by the Board through its president. The amendment provided, in pertinent part:
It is therefore agreed that [the Board of Supervisors, Humphreys County, Mississippi for and on behalf of said County] and [Humphreys County Nursing Home, Inc.] hereby amend the Lease dated the 6th day of January, 1983 by and between the parties and all amendments thereto to show that the Lessee is Community Extended Care Centers, Inc. as a result of the Articles of Amendment to its charter filed by the Lessee with the Secretary of State on October 12,1990.
¶ 8. For approximately thirteen years, the Board affirmatively acknowledged the existence of the January 6, 1983 lease contract by accepting CECC’s monthly payments of rent, by assessing and collecting taxes under the lease contract, and by agreeing to two amendments to the lease contract.
¶ 9. On September 12, 1996, the Board advised CECC that it considered the January 6,1983 lease contract a nullity and that it would repossess the nursing home unless CECC agreed to renegotiate the terms of the lease contract to increase the rental payments for the remaining term of the lease contract (eight years) to a flat monthly rate of $20,000.
¶10. On September 26, 1996, CECC filed a complaint for declaratory judgment asking the Chancery Court of Humphreys County to adjudicate that the lease contract between CECC and the Board was valid and enforceable according to its express terms and conditions. On motion for summary judgment by the Board and cross-motion for summary judgment by CECC, the chancellor heard oral arguments by both parties and then granted the Board’s motion finding there was no genuine issue of material fact as to the invalidity of the lease between CECC and the Board and denied CECC’s cross-motion finding CECC was not entitled to summary judgment on its claim that the Board was estopped from challenging the validity and enforceability of the lease. Explaining his ruling, the chancellor stated:
I am unable to reconcile what seems to me to be contradictions in the case law between the requirement that for an action of the Board of Supervisors to be official and binding that the action must be spread on the Board’s minutes and the general principle of equitable estop-pel. As [CECC’s attorney] pointed out in response to questioning by the Court, the [Board of Supervisors] is relying on a “technical loophole.” However, if as the [Board] argues, that “technical loophole” is controlling, then [the Board] is entitled to summary judgment.
Also in the Court’s mind is the consideration that if the Court were to deny *801 the [Board’s] Motion, then a rather lengthy trial would ensue. If the Court is correct in its conclusion that Summary Judgment is proper, then to go to trial would be a waste of both time and money.
CECC timely appealed, raising the following contentions:
I. THE LOWER COURT ERRED IN GRANTING THE MOTION FOR SUMMARY JUDGMENT FILED BY HUMPHREYS COUNTY BOARD OF SUPERVISORS AND HUMPHREYS COUNTY, MISSISSIPPI, SINCE THE UNDISPUTED FACTS ESTABLISH THAT THE APPELLEES WERE NOT ENTITLED TO A JUDGMENT AS A MATTER OF LAW.
II. THE LOWER COURT ERRED IN DENYING THE CROSS MOTION FOR SUMMARY JUDGMENT FILED BY COMMUNITY EXTENDED CARE CENTERS, INC. SINCE UNDISPUTED FACTS- ESTABLISH THAT COMMUNITY EXTENDED CARE CENTERS, INC.-WAS ENTITLED TO ENTRY OF SUMMARY JUDGMENT AS A MATTER OF LAW ON ITS CROSS MOTION FOR SUMMARY JUDGMENT.
¶ 11. We find there is no' genuine issue of material fact and that CECC is entitled to prevail as a matter of law.
ARGUMENT AND DISCUSSION OF LAW
¶ 12. Rule 56(e) of the Mississippi Rules of Civil Procedure provides that a motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law: Miss. R. Civ. P. 56. This Court conducts de novo review of orders granting or denying summary judgment and looks at all the eviden-tiary matters before it viewing the evidence in the light most favorable to the party against whom the motion has been made. Russell v. Orr, 700 So.2d 619, 622 (Miss.1997). The above recited facts are uncontroverted by the parties. The' only question to be resolved is a question of law: Whether the failure to attach a contract to the original board minutes is rectified by the contract’s appearing in the same chancery clerk’s office in the deed records and the parties’ subsequent affirmative acts.
¶ 13. CECC asserts that the entry of the resolution authorizing the Board president to execute the lease contract on the Board’s minutes, the filing of the executed lease contract in the office of the Chancery Clerk of Humphreys County, and the subsequent amendments of the lease contract in which the Board acknowledged the January 6, 1983 lease contract were sufficient to render the lease valid and enforceable. The Board contends the lease contract itself must be “spread over the minutes” for it to be valid and enforceable. We find the lease contract was entered sufficiently into the Board’s minutes to bind the Board to its terms and conditions.
¶ 14. Miss.Code Ann. § 25-1-43 (Rev. 1991) provides:
An officer shall not enter into any contract on behalf of the state, or of any county, city, town, or village thereof, without being specially authorized thereto by law or by an order of the board of supervisors or municipal authorities.
¶ 15. Acting under Miss.Code Ann. § 19-7-3 (Supp.1998), the Board leased the county-owned nursing home facility to CECC:
In case any of the real estate belonging to the county shall cease to be used for county purpo'ses, the board of supervisors may sell, convey or lease the same on such terms as the board may elect....
However, whenever the board of supervisors shall find and determine, by Resolution duly and lawfully adopted and spread upon its minutes (a) that any county-owned property is no longer needed for county or related purposes and is not to be used in the operation of *802 the county, (b) that the sale of the property in the manner otherwise provided by law is not necessary or desirable for the financial welfare of the county, and (c) that the use of the county property for the purpose for which it is to be sold, conveyed or leased will promote and foster the development and improvement of the community in which it is located and the civic, social, educational, cultural, moral, economic, or industrial welfare thereof, the board of supervisors of such county shall be authorized and empowered, in its discretion, to sell, convey, lease, or otherwise dispose of same for any of the purposes set forth herein.
Id. (emphasis added).
¶ 16. In the case sub judice, the Board resolution was duly and lawfully spread upon its minutes. The technical omission of spreading the lease contract on the minutes of the Board did not invalidate the lease contract inasmuch as the lease contract was recorded in the land records of the chancery clerk and the parties to the contract had fulfilled the requirements of the contract for thirteen years.
¶ 17. The Mississippi Supreme Court has held consistently that “[a] Board of Supervisors can act only as a body, and its act must be evidenced by an entry on its minutes. The minutes of the board of supervisors are the sole and exclusive evidence of what the board did.” Nichols v. Patterson, 678 So.2d 673, 677 (Miss.1996) (quoting Smith v. Board of Supervisors of Tallahatchie County, 124 Miss. 36, 41, 86 So. 707, 709 (1921)). The reasoning behind this rule is to protect the board from being bound by the unauthorized acts of individual members of the board or an agent thereof. Butler v. Board of Supervisors for Hinds County, 659 So.2d 578, 579 (Miss.1995).
Such contracts, like all contracts made by board[s] of supervisors, must be evidenced by orders duly entered on their minutes, or by papers in such orders referred to and made a part thereof.
Marion County v. Foxworth, 83 Miss. 677, 36 So. 36, 37 (1904) (emphasis added). In Foxworth, the minutes reflected that a proposal for additional work on a bridge was made, but its details, including plans and specifications, were filed not in the minutes but with the other earlier plans and specifications already adopted for the bridge. Id. at 37. The court found that the contract was maintained by the same chancery clerk and, if the record is created contemporaneously with the minutes, that should be sufficient. What the board had approved was immediately viewable by the public and was in no way uncertain or hidden.
¶ 18. Looking at the minutes of the Board throughout the thirteen year period the lease contract has been in effect, we find sufficient evidence of the Board’s intent to be bound by the lease contract. The resolution showing that the supervisors unanimously approved the lease with CECC and authorized the Board president to sign the lease on behalf of the Board was spread on the minutes of the Board. The lease contract was filed in the land records of the chancery clerk. The minute books and records of the board of supervisors are maintained by the chancery clerk. Miss. Const, art. 6, § 170.
¶ 19. While the supreme court has held it is the responsibility of the entity contracting with the Board to see that the contract is legal and properly recorded, Thompson v. Jones County Community Hosp., 352 So.2d 795, 797 (Miss.1977), CECC contends the Board assumed the responsibility of recording the lease contract when its attorney notified CECC that he, as attorney for the Board, had filed the lease contract in the land records of the Humphreys County Chancery Clerk in accordance with Miss.Code Ann. § 89-5-7 (Rev.1991). Furthermore, in June 1990 an amendment to the January 6, 1983 lease contract to increase insurance coverage was approved unanimously by the Board and duly filed with the Board minutes and in the land records of the chancery clerk. *803 In November 1990 an amendment to change the name of the lessee under the January 6, 1983 lease contract was signed by the Board, acting through its president, who was declared duly authorized so to act. Thus, whether the subsequent affirmative acts of the Board in acknowledging the existence of the lease contract fulfilled the purpose of the requirement that the lease contract be spread across the minutes is a matter of law.
¶ 20. The eases cited by the Board in support of its argument that the lease contract should be declared invalid and unenforceable as a matter of law due to the failure of CECC to file the lease contract in the minutes of the Board are distinguishable from the case sub judice in that in each case cited the contracting party sought payment from the board under an oral contract, a tentative contract in which the terms and conditions had not been fully set out and agreed to by the parties at the time of adoption by the board or an expired written contract. Thompson, 352 So.2d at 796 (involving discharged employee seeking payment under an oral employment contract the terms of which had not been finalized at the time of approval by the board nor were the terms sufficiently described in the minutes); Butler, 659 So.2d at 578 (involving subcontractor seeking payment for extra work performed without prior approved of the board of supervisors); Warren County Port Comm’n v. Farrell Constr. Co., 395 F.2d 901 (5th Cir.1968) (involving contractor who performed additional work orally ordered by engineer seeking payment from the board of supervisors); Colle Towing Co. v. Harrison County, 213 Miss. 442, 57 So.2d 171 (1952) (involving payment sought for two barges rented under oral contract); Burt v. Calhoun, 231 Sp.2d 496 (Miss.1970) (involving county engineer seeking payment for services performed after contract had expired); Martin v. Newell, 198 Miss. 809, 23 So.2d 796 (1945) (involving purchaser of county-owned property seeking refund of purchase price when unrecorded deed created cloud on title).
¶ 21. If there are defects in the contracting process, the entity contracting or purchasing from a governmental body normally cannot seek relief merely because it is the government itself that erred. Martin, 198 Miss. at 815, 23 So.2d 796. In Martin, the court said that a party contracting with a county is bound by the requirement that a contract “requires an entry on the minutes of the board.” Id. In this case, there was a substantial entry —a resolution that authorized the president to execute “the original lease” that inferen-’ tially . was physically presented to the Board and was recorded less than two weeks later.
¶ 22. CECC is not attempting to have the Board expend money based on an expired written contract or an oral contract the express terms of which are not recorded in the records of the chancery clerk. Instead, fof moré' than thirteen years CECC has complied with all terms and conditions set forth in the written lease contract and amendments thereto. The Board does not dispute the fact that the January 6, 1983 lease contract between CECC and the Board was executed by the Board president acting under the express authorization of the Board. There is no dispute that the resolution authorizing the president to so execute the lease contract was entered in the minutes of the Board. Nor is it disputed that the Board, through its attorney, had actual notice that the lease contract was filed in- the records of the chancery clerk. After reaping the benefits under the lease contract, the Board challenges its validity on a technical omission.
¶ 23. We find that the entry of the resolution unanimously passed on January 6, 1983 authorizing the Board president “to execute in duplicate the original of the lease,” the filing of the lease contract in the land records of the chancery clerk’s office, the Board’s subsequent approval of the amendment to the lease contract dated *804 June 4, 1990, the filing of the amendment in the land records of the chancery clerk’s office and the entry of the amendment in the Board minutes were sufficient acts to ensure that no individual member of the Board had bound the Board without the benefit of the consent of the Board as a whole by executing the lease contract between CECC and the Board of Supervisors of Humphreys County.
¶ 24. CECC argues the Board should be equitably estopped from arguing that the technical omission by the Board and CECC in having the lease contract simultaneously spread across the minute book and filed in the land records (both of which are maintained in the chancery clerk’s office) should invalidate the lease contract. Before the doctrine of equitable estoppel will be applied the following factual elements must exist: (1) belief and reliance on some representation; (2) change of position, as a result thereof; (3) detriment or prejudice caused by the change of position. Covington County v. Page, 456 So.2d 739, 740 (Miss.1984) (citations omitted). The.Board “may be equitably estopped under the proper circumstances.” Board of Educ. of Lamar County v. Hudson, 585 So.2d 683, 688 (Miss.1991) (citations omitted). However, no estoppel may be enforced “against' the state or its counties where the acts, of their officers were unauthorized.” Id.
¶ 25. Here, the resolution entered on the Board minutes shows the supervisors unanimously approved the lease contract with CECC and authorized the Board president to sign the lease contract on behalf of the Board. Therefore, the execution of the lease contract between CECC and Humphreys County was not an unauthorized act by the Board president.
¶ 26. The Board admits that CECC has complied with all terms and conditions of the lease contract and amendments to the lease. As evidenced by the affidavit testimony of Randy Belton, CECC’s accountant, CECC has paid the Board $1,116 million in rent through December 1997, made $207,192.06 worth of capital improvements to the nursing home, and has spent substantial resources in training employees and in ensuring that the nursing home complied with state and federal regulatory requirements in reliance upon the validity and enforceability of the lease. CECC has also paid all local and personal property taxes in connection with the leased property, kept the leased property insured, and paid all other costs regarding the use and operation of the nursing home as required by the lease. The signing of the lease contract and subsequent amendments to the lease contract and the assessment and acceptance of taxes for the property are affirmative actions of the Board which warrant the application of the doctrine of equitable estoppel against the Board. Covington County, 456 So.2d at 742.
¶ 27. We hold that the Board, after reaping the benefits of the lease for more than thirteen years, is not excused from its obligations under the lease contract because of CECC’s failure to have the lease contract filed simultaneously in the minute book and in the land records of the chancery clerk, and, applying the doctrine of equitable estoppel, the Board is barred from denying the validity and enforceability of the lease. Therefore, we reverse the judgment in favor of the Board of Supervisors of Humphreys County and Hum-phreys County, and render judgment in favor of CECC as a matter of law.
¶ 28. THE JUDGMENT OF THE HUMPHREYS COUNTY CHANCERY COURT GRANTING SUMMARY JUDGMENT TO THE APPELLEES IS REVERSED AND JUDGMENT IS RENDERED IN FAVOR OF COMMUNITY EXTENDED CARE CENTERS, INC. ALL COSTS OF THIS APPEAL ARE TAXED TO APPELLEES.
McMILLIN, C.J., AND SOUTHWICK, P.JJ., DIAZ, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
*805 KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.
IRVING AND MOORE, JJ., NOT PARTICIPATING.